# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DEON JACKSON

       Plaintiff,

    v.

DISTRICT OF COLUMBIA, *et al*,

      Defendants.

Civil Action No. 13-205 (CKK)

## MEMORANDUM OPINION
(March 17, 2015)

Plaintiff Deon Jackson filed suit against the District of Columbia and Metropolitan Police Department Officers Joshua Boutaugh and Michael Weiss, asserting violations of Plaintiff's civil rights, in addition to common law tort claims in connection with a traffic stop during which Plaintiff alleges his arm was broken.   Presently before the Court is Defendants' Motion for Summary Judgment.   Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court finds Defendants are entitled to qualified immunity from Plaintiff's 42 U.S.C. § 1983 unlawful arrest and excessive force claims.   The Court declines, however, to exercise supplemental jurisdiction over Plaintiff's common law assault and battery, false arrest/false imprisonment, and intentional infliction of emotional distress claims and, therefore,

---

[1] Defendants' Motion for Summary Judgment ("Defs.' Mot."), ECF No. [52]; Defendants' Statement of Material Facts to which there is No Genuine Dispute ("Defs.' Stmt."), ECF No. [52-1]; Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opp'n"), ECF No. [53]; Plaintiff's Statement of Material Facts in Dispute ("Pl.'s Stmt."), ECF No. [53]; Defendants' Reply to Plaintiff's Opposition to their Motion for Summary Judgment ("Defs.' Reply"), ECF No. [54]; Defendants' Response to Plaintiff's Statement of Material Facts in Dispute ("Defs.' Resp. Stmt."), ECF No. [54-1].

dismisses without prejudice these claims.   Accordingly, Defendants' Motion for Summary Judgment is GRANTED.

## I.       BACKGROUND

At the outset, the Court notes that Plaintiff has failed to comply with the Federal Rules of Civil Procedure and the Local Civil Rules in submitting his Statement of Material Facts.  Pursuant to the Rules, the non-moving party must respond to each of the opposing party's alleged facts with an indication of whether the non-moving party admits or denies the fact.  *See* LCvR 7(h)(1); Fed. R. Civ. P. 56(c).  Plaintiff has provided the Court with a Statement of Material Facts, but Plaintiff's Statement does not respond to each of Defendant's alleged facts as required by the Federal and Local Rules.   Accordingly, the Court could treat Defendants' Statement of Material Facts as conceded to the extent Plaintiff has failed to respond to certain factual allegations.  *See* LCvR 7(h)(1) ("In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."); Fed. R. Civ. P 56(e) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion").

Although Plaintiff's noncompliance with the Rules has made resolution of Defendants' Motion more complicated, Defendants have relied primarily on the undisputed facts as presented by Plaintiff in Plaintiff's Statement of Material Facts and Opposition.  Accordingly, the Court will take Defendants' lead and rely on the facts as stated by Plaintiff.  For the purposes of setting forth the factual background of this case, the Court will cite to the facts in Defendants' Statement of Facts since it provides a fuller exposition of the facts in this case than Plaintiff's Statement.  The

Court will cite to Plaintiff's Statement of Facts or Opposition when a fact is disputed or further explicated by Plaintiff.

### A. Factual Background

On or about February 18, 2012, Defendants Boutaugh and Weiss observed Plaintiff driving along Brentwood Road, Northeast, in Washington, D.C.  Defs.' Stmt. ¶ 2.  Defendants Weiss and Boutaugh "believed Plaintiff was driving erratically, and observed him commit traffic infractions, including crossing the double line."  *Id.* ¶ 3.  As a result, Defendants initiated a stop of Plaintiff's vehicle. *Id.* ¶ 5.  Plaintiff disputes that he committed any traffic violations and claims that "he did not swerve out of his lane and had no problems maintaining control of his vehicle at all times." Pl.'s Stmt. ¶ 1.  Plaintiff "submits the most that Defendants could have observed on that evening as they were driving behind him, was his car hesitating on a couple of occasions due to a transmission problem."  Pl.'s Opp'n at 13 (citing Pl.'s Ex. A (Jackson Depo.), ECF No. [53-1], at 182:10-183:9); Defs.' Stmt. ¶ 4 (citing to Defs.' Ex. C (Jackson Depo.), ECF No. [52-4], at 23:19-24:5).

After initiating a stop of Plaintiff's vehicle, Defendant Weiss approached Plaintiff's vehicle on the driver side, while Defendant Boutaugh approached the vehicle on the passenger side.  Defs.' Stmt. ¶ 7.  Plaintiff was asked to roll down his driver side window, but Plaintiff explained to the officers that he was unable to do so because his window was broken.  *Id.* ¶ 8.  Instead, Plaintiff opened his driver side door to give Defendant Weiss his license and registration.  *Id.* ¶¶ 9-10. Defendant Weiss then returned to the squad car and called for a field sobriety officer while Defendant Boutaugh remained at the passenger side of Plaintiff's vehicle. *Id.* ¶¶ 10-12.  Defendant Boutaugh "believed that Plaintiff's words were slurred as he spoke and he was slow to respond to questions."  *Id.* ¶ 13.  Plaintiff contends that his "speech was not slurred and he was not slow to

respond to the officers' questions." Pl.'s Stmt. ¶ 3. Defendant Boutaugh explained to Plaintiff that a field sobriety officer had been contacted and would administer a field sobriety test to Plaintiff, but Plaintiff "indicated that he would not submit to a field sobriety test." Defs.' Stmt. ¶¶ 14-15. Plaintiff alleges that he was asked if he would take a breathalyzer test and that he refused to submit to a breathalyzer test, not a field sobriety test. Pl.'s Stmt. ¶ 13; Pl.'s Opp'n at 6 (citing Pl.'s Ex. A (Jackson Depo.), at 50:2-51:2; 68:7-20; Pl.'s Ex. C (Jackson Decl.), ECF No. [53-3]. The Court finds this dispute to be of no moment as what is ultimately material from this fact is Plaintiff's refusal to submit to an evaluation of his sobriety.[2]

Plaintiff then closed the driver side door. Defs.' Stmt. ¶ 16. Defendant Boutaugh "did not know what Plaintiff might do next and believed he may attempt to drive away." *Id.* ¶ 17. Plaintiff contends that he informed Defendant Boutaugh that he was going to close his door "because he was cold." Pl.'s Stmt. ¶ 6. Defendant Boutaugh then went to Plaintiff's driver side door to place him under arrest. Defs.' Stmt. ¶ 18. Defendant Boutaugh[3] proceeded to pull Plaintiff out of the vehicle and, in so doing, "applied pressure to Plaintiff's arm." *Id.* ¶¶ 19-20. In Plaintiff's factual recitation, Plaintiff further explains that "as Defendant Boutaugh is pulling Plaintiff out of the car, he bends and twists Plaintiff's arm behind his back while at the same time bending his left hand in towards his forearm in a goose neck position, and at the same time, yanking his arm up towards

---

[2] Moreover, in Defendants' Reply, Defendants appear to agree that Plaintiff was asked to take a breathalyzer test, but refused to submit to such a test.

[3] There is a factual dispute as to whether Defendant Weiss was involved in restraining Plaintiff when Plaintiff's arm broke or whether he was still at the squad car. *See* Defs.' Stmt. ¶ 21; Pl.'s Stmt. ¶ 7. The Court will address the contours and impact of this factual dispute in Part A.ii. of the Discussion. However, to avoid unnecessary confusion in the recitation of the Factual Background, the Court will only reference Defendant Boutaugh's involvement in restraining Plaintiff since all parties are in agreement that Defendant Boutaugh was restraining Plaintiff when his arm broke.

his shoulder area" and "pushing Plaintiff in towards his car." Pl.'s Opp'n at 7 (citing Pl.'s Ex. A (Jackson Depo.), at 51:11, 53:12-58:1; Pl.'s Ex. B (Boutaugh Depo.), ECF No. [53-2], at 41:17-42:22). Plaintiff's arm broke almost immediately. Defs.' Stmt. ¶ 20.

Once Plaintiff's arm broke and went limp, "Defendant Boutaugh dropped Plaintiff's arm and no additional pressure was applied" and an ambulance was called.[4] *Id.* ¶ 23. Plaintiff was taken to the hospital by ambulance. *Id.* ¶ 24. At the hospital, "Plaintiff refused a breathalyzer and blood alcohol test when asked by the District's field sobriety officer." *Id.* ¶ 25. After his release from the hospital, Plaintiff was transported to the police station where he was charged with Assault on a Police Officer and traffic violations. *Id.* ¶ 26. The traffic violation charges were dismissed and the charge of Assault on a Police Officer was later dropped for want of prosecution. *Id.* ¶¶ 27-28.

## B. Procedural Background

Plaintiff filed suit on February 15, 2013, asserting eight causes of action; specifically, one count of deprivation of civil rights under color of law in violation of 42 U.S.C. § 1983 as to all Defendants (Count I), and seven common law tort claims. *See generally* Compl., ECF No. [1].

---

[4] In the factual recitation in Plaintiff's Opposition, Plaintiff contends that Defendant Boutaugh told Plaintiff that he didn't believe that Plaintiff's arm was broken and did not let go of Plaintiff's arm—even though Plaintiff had screamed that it was broken—until Defendant Weiss said that "he believed the arm was broken, at which time Plaintiff's arm went limp and Defendant Boutaugh finally released the arm." Pl.'s Opp'n at 7 (citing Pl.'s Ex. A (Jackson Depo.), at 51:19, 55:6-8, 56:13-57:8, 58:2-59:22); Pl.'s Ex. C (Jackson Decl.)). However, Plaintiff's cited deposition testimony and declaration do not support this factual allegation. Instead, Plaintiff testified that Defendant Boutaugh let go of Plaintiff's arm once his arm broke and went limp and "drop[ped] to the left side of [his] body." Pl.'s Ex. A (Jackson Depo.), at 58:17-59:7. Plaintiff testifies that Officer Boutaugh told Plaintiff that his arm is not broken and that Officer Weiss told Officer Boutaugh that Plaintiff's arm *is* broken, but Plaintiff cannot remember if Officer Boutaugh made that remark before or after he let go of Plaintiff's arm. *Id.* at 59:8-13. Accordingly, the Court does not find there to be a genuine dispute as to whether Plaintiff's arm was released promptly after it was broken.

The District of Columbia moved to dismiss Count I for failure to state a claim as to Defendant District of Columbia. The Court granted Defendants' Motion to Dismiss and dismissed without prejudice Plaintiff's § 1983 claims against Defendant District of Columbia. *See* Mem. Op. (June 13, 2013), ECF No. [19]. Plaintiff subsequently sought leave to file an amended complaint which the Court granted except as to Plaintiff's § 1983 claim against the District as it "remain[ed] substantively identical to the Count I that the Court dismissed in its June 13, 2013, Order." Order (Nov. 18, 2013), ECF No. [32].

Plaintiff's Amended Complaint, *see* ECF No. [33], asserts the same causes of action as Plaintiff's original Complaint. Specifically, Plaintiff asserts the following causes of actions against the following Defendants: (1) deprivation of civil rights under color of law in violation of 42 U.S.C. § 1983 as to Defendants Weiss and Boutaugh (Count I); (2) assault/battery against Defendant Boutaugh and the District of Columbia; (3) intentional infliction of emotional distress as to all Defendants; (4) false arrest/false imprisonment as to all Defendants; (5) malicious prosecution as to all Defendants; (6) negligent failure to properly train and supervise against the District of Columbia; (7) negligent hiring/retention as to the District of Columbia; and (8) negligence as to all Defendants.

Presently before the Court is Defendants' Motion for Summary Judgment as to all claims in Plaintiff's Amended Complaint. As Plaintiff has filed an Opposition to Defendants' Motion for Summary Judgment and Defendants filed a Reply, this Motion is now ripe for the Court's review.

## II.   LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary

judgment; the dispute must pertain to a "material" fact. *Id*. Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record – including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence – in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether

it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

### III.   DISCUSSION

Defendants move for summary judgment on all of Plaintiff's claims in his Amended Complaint. In his Opposition to Defendants' Motion for Summary Judgment, Plaintiff concedes judgment on his malicious prosecution and abuse of process claim (Count V) as well as his negligence claims (Counts VI through VIII). Accordingly, the Court shall only address Plaintiff's § 1983 claims as they relate to Defendants Boutaugh and Weiss (Count I); Plaintiff's assault/battery claim against Defendants Boutaugh and the District of Columbia (Count II); Plaintiff's intentional infliction of emotional distress claim against all Defendants (Count III); and Plaintiff's false arrest claim against all Defendants (Count IV). Ultimately, the Court finds Defendants are entitled to judgment on Plaintiff's § 1983 claims. As to Plaintiff's common law claims, the Court shall, in its discretion, decline to exercise supplemental jurisdiction over these claims.

### A.  Section 1983 Claims

Section 1983 provides a remedy against "any person" who, under color of state law, deprives another of rights protected by the Constitution. 42 U.S.C. § 1983. Count I of Plaintiff's Complaint states in conclusory form that "[t]he Defendants [sic] actions arise under the United States Constitution, particularly under the provisions of the First, Fourth, Fifth, Sixth and

Fourteenth Amendments." Compl. ¶ 16. In response to Defendants' Motion for Summary Judgment, Plaintiff concedes that he cannot sustain a Constitutional claim under the First, Fifth, Sixth, or Fourteenth Amendments. *See* Pl.'s Opp'n at 8-9. Accordingly, the Court shall only analyze Plaintiff's claim that Defendants Boutaugh and Weiss deprived Plaintiff of his Fourth Amendment rights.

Plaintiff alleges that the Defendant officers violated the Fourth Amendment by both unlawfully arresting Plaintiff and by using excessive force in arresting Plaintiff. Defendants argue that the evidence in the record does not support a finding that the officers unlawfully arrested Plaintiff or used excessive force against Plaintiff and that Defendants are entitled to qualified immunity for their actions.

A plaintiff may not recover under § 1983 if the defendant is entitled to qualified immunity. *See Scott v. Harris,* 550 U.S. 372, 376 (2007). "Qualified immunity shields federal and state officials from money damages unless a plaintiff alleges facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd*, 131 S.Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "[C]onduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable officer would have understood that what he is doing violates that right." *Id.* at 2083 (internal quotation marks and notations omitted) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). The district court has the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

The Court shall address Plaintiff's § 1983 unlawful arrest and excessive force claims in turn.

### i.   Unlawful Arrest

Defendants claim that they are entitled to qualified immunity because they had probable cause to arrest Plaintiff and, thus, did not violate Plaintiff's constitutional rights in arresting him. Specifically, Defendants contend that "where it is undisputed that the officers observed that Plaintiff had driven erratically, he appeared intoxicated, and Plaintiff stated that he would refuse sobriety testing, probable cause existed to arrest Plaintiff for driving under the influence." Defs.' Mot. at 8.  Plaintiff responds that the "facts relevant to questions of probable cause and whether this was a lawful arrest are strongly contested in this case" and, thus, summary judgment is not appropriate as to this claim.  Pl.'s Opp'n at 16.

"Because it is well-established that 'an arrest without probable cause violates the [F]ourth [A]mendment,' the defendant is entitled to qualified immunity only if 'a reasonable officer could have believed that probable cause existed' to arrest the plaintiff . . . ." *Ronkin v. Vihn*, --- F.Supp.3d --- , 2014 WL 5280682, *4 (D.D.C. Oct. 16, 2014) (quoting *Martin v. Malhoyt*, 830 F.2d 237, 262 (D.C. Cir. 1987) & *Hunter v. Bryant*, 502 U.S. 224, 228 (1991))).

> The assessment of probable cause is an objective one.  An arrest is supported by probable cause if, 'at the moment the arrest was made, . . . the facts and circumstances within [the arresting officers'] knowledge . . . were sufficient to warrant a prudent man in believing' that the suspect has committed or is committing a crime.

*Wesby v. District of Columbia*, 765 F.3d 13, 20 (D.C. Cir. 2014) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (alteration in original)).  Courts must "evaluate[ ] the evidence from the perspective of the officer, not the plaintiff." *Moorehead v. District of Columbia,* 747 A.2d 138, 147 (D.C. 2000).  Furthermore, "[i]t must always be remembered that probable cause is evaluated 'from the

perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'
" *Frazier v. Williams*, 620 F.Supp.2d 103, 108 (D.D.C. 2009) (quoting and citing *Wolfe v. Perry*,
412 F.3d 707, 717 (6th Cir. 2005)).

Plaintiff argues that the Defendant officers did not have probable cause to conduct an
investigatory stop of Plaintiff's vehicle, nor did they have probable cause to arrest Plaintiff for any
crime.   Defendants respond that, even accepting Plaintiff's version of the facts, the officers had
probable cause to stop Plaintiff's vehicle because Plaintiff admits that he was "stalling,"
"hesitat[ing]," and "lurch[ing]" as he drove along Brentwood Road.   Defs.' Mot. at 15; *see* Pl.'s
Ex. A (Jackson Depo.), at 182:10-183:9.  It is undisputed that the officers observed Plaintiff driving
erratically at night.   The Court finds that such an observation is sufficient to support a "reasonable
suspicion" that Plaintiff was driving while intoxicated, which is actually all that is needed for an
officer to conduct a lawful investigatory stop of a vehicle.  *United States v. Johnson*, 519 F.3d 478,
481 (D.C. Cir. 2008) ("In *Terry* [*v. Ohio*], the Supreme Court held that 'the police can stop and
briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported
by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause.'").
Indeed, Plaintiff's own expert, Gerard Busnuk, testified at deposition that the officers had
reasonable suspicion that Plaintiff had been driving under the influence and, thus, had reason to
stop and detain him.   Defs.' Ex. F (Busnuk Depo.), ECF No. [52-7], at 74:6-11 ("My opinion is
that at the time the arrest was made, . . . the officers had reason to stop and detain Mr. Jackson . .
. ."); 98:22-99:5 ("Q. And you, in fact, believe that they did have reasonable suspicion that [Mr.
Jackson was driving under the influence in order to stop and detain him for further investigation]
– A. Based on their written documentation,  yes.").

As for the officers' ultimate arrest of Plaintiff, Defendants argue that the facts known to the officers provided probable cause to arrest Plaintiff for either driving under the influence ("DUI"), reckless driving, or failure to obey. Defs.' Mot. at 17-18; Defs.' Reply at 7-11. An arrest is valid so long as "the [arresting] officers had probable cause to believe [the plaintiff] had committed *any* crime." *United States v. Broadie*, 452 F.3d 875, 881 (D.C. Cir. 2006) (alterations and emphasis added). An officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford,* 543 U.S. 146, 153 (2004). Accordingly, as the Court finds that the officers had probable cause to arrest Plaintiff for DUI, the Court need not evaluate whether the officers had probable cause to arrest Plaintiff for reckless driving or failure to obey.

Pursuant to D.C. Code § 50-2201.05(b)(1)(A)(i), "[n]o person shall operate or be in physical control of any vehicle in the District . . . (II) While under the influence of intoxicating liquor or any drug or combination thereof."[5] Here, it is undisputed that the officers observed Plaintiff driving erratically and that Plaintiff refused when asked to take a breathalyzer test.[6] It is reasonable for an officer to view Plaintiff's refusal to submit to a breathalyzer as evidence of guilt.

---

[5] As Plaintiff was arrested in February 2012, the Court cites to the D.C. Code provision that was operative at the time of Plaintiff's arrest.

[6] Defendants also argue that it is undisputed that Plaintiff was answering questions slowly and with slurred speech even though Plaintiff specifically states that he was not answering questions slowly or with slurred speech. Defs.' Reply at 9 n.2. Defendants argue that Officer Boutaugh interpreted Plaintiff's responses to be slow and slurred and that Plaintiff cannot speak to the officer's interpretation. The Court does not agree that this fact is undisputed. While the Court must consider whether probable cause existed to arrest Plaintiff based on the facts known to the arresting officer and based on the officer's perspective, not the plaintiff's, this does not mean that a plaintiff cannot dispute the validity and veracity of the arresting officer's alleged perception of the facts. Accordingly, the Court will not consider this fact among the undisputed facts known to the officers at the time of Plaintiff's arrest.

*See Stevenson v. District of Columbia*, 562 A.2d 622, 624 (D.C. 1989) (citing D.C. Code § 40-505(c)[7]) ("appellant's refusal to take a blood alcohol test could properly be considered against him as evincing consciousness of guilt."); D.C. Code § 50-1902 (2001) ("Any person . . . who operates a motor vehicle within the District shall be deemed to have given his or her consent, . . . to 2 chemical tests of the person's blood, urine, or breath, for the purpose of determining blood-alcohol content or the blood-drug content."); D.C. Code § 50-1905(c) (2001) ("evidence of . . . refusal to submit [to chemical testing] shall be admissible in any civil or criminal proceeding arising as a result of the acts alleged to have been committed by the person prior to the arrest"); *see also Miller v. Harget*, 458 F.3d 1251, 1260 (11th Cir. 2006) (citing to Ga. Code Ann. § 40-5-67.1(b)(2) which provides that an individual's refusal to submit to a blood-alcohol test is admissible as evidence at trial and finding that "[i]t was reasonable for Officer Harget to view th[e] choice [to refuse a breathalyzer test] as evidence of guilt"); *Wilder v. Turner,* 490 F.3d 810, 815 (10th Cir. 2007) (holding that "probable cause developed when twice Plaintiff refused to participate in a field sobriety test"); *Summers v. State of Utah,* 927 F.2d 1165, 1166 (10th Cir. 1991) ("The undisputed facts regarding plaintiff's operation of his vehicle, the officer's scent of alcohol emanating from the vehicle and plaintiff's refusal to take a field sobriety test substantiate the . . . conclusion" that the officer had probable cause).  Accordingly, the Court concludes that a prudent officer could conclude from the combination of Plaintiff's erratic driving and the refusal to take the breathalyzer test that Plaintiff had in fact been drinking.  The Court would also note that, coupled with Plaintiff's refusal to take the breathalyzer test, the fact that Defendant Boutaugh, as discussed in the following section, reasonably inferred that Plaintiff was attempting to flee contact

---

[7] The D.C. Code provision relied on in *Stevenson* is substantively the same as the parallel provision operative at the time of Plaintiff's arrest—D.C. Code § 50-1905(c) (2001).

with the officers when he closed his door, further supports a finding that the officers had probable cause for Plaintiff's arrest.

Plaintiff principally argues that it was "improper for Defendants to arrest Plaintiff prior to obtaining an official opinion and authorization from a certified field sobriety officer that there was in fact probable cause to arrest for DUI." Pl.'s Opp'n at 23-24. Plaintiff cites to Metropolitan Police Department ("MPD") General Order 502.02 for this proposition. *Id.* MPD General Order 502.02 states that "[i]f a [Standardized Field Sobriety Tests ("SFST")] trained member is not available or the driver refuses to participate in a SFST, the member shall request through [the Office of Unified Communications] a supervisor respond to the scene to ensure probable cause is established prior to an arrest." Pl.'s Ex. E (MPD General Order), ECF No. [53-5], at 7. However, Plaintiff agrees with Defendants that the MPD General Order "does not specifically preclude arrest without the approval of an MPD officer." Pl.'s Opp'n at 23. Plaintiff does argue that General Orders "are the policy and procedures that MPD officers are required to follow and put into practice in the course of exercising their duties," but Plaintiff does not cite to any authority in support of this contention. *Id.* In any event, "[i]t is well-settled that evidence tending to show a violation of an internal operating procedure or guideline existing at the state law level is not only insufficient to prove a violation of the United States Constitution, but it is also irrelevant to such a claim." *Fernandors v. District of Columbia*, No. 02-2001, 2006 WL 449300, *1 (D.D.C. Feb. 23, 2006) (citing *United States v. Moore,* 36 F.3d 127, 1994 WL 535734, *2 (D.C. Cir. 1994)). Moreover, the Court notes that MPD General Order 502.02 does not state that the absence of a supervisor's input means that an officer does not have probable cause that a DUI has been committed.

As the Court finds that Defendants Boutaugh and Weiss had "an objectively reasonable basis for believing that the facts and circumstances surrounding [Plaintiff's] arrest were sufficient to establish probable cause," *Wardlaw v. Pickett,* 1 F.3d 1297, 1304 (D.C. Cir. 1993) (citing *Malley v. Briggs,* 475 U.S. 335, 341 (1986)), they are immune from Plaintiff's suit for damages.

### ii.   Excessive Force

Plaintiff next argues that the officers used excessive force when they pulled Plaintiff out of his car, twisted his left arm behind him, and his left arm broke.  Defendants contend that "Plaintiff has not presented evidence that excessive force was used by either Defendant in removing him from the vehicle or trying to handcuff him."  Defs.' Mot. at 13.

It is well-established that police officers have the authority "to use some degree of physical coercion or threat thereof" in making an arrest.   *Graham v. Connor,* 490 U.S. 386, 396 (1989).  " '[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment."   *Id.* (citation omitted).   If the court "determines that the amount of force applied was objectively reasonable under the circumstances, the officer is entitled to qualified immunity."  *Gee v. District of Columbia*, No. 04-1797, 2005 WL 3276272, *2 (D.D.C. Aug. 22, 2005) (citing *Graham,* 490 U.S. at 396-397).  To determine whether an officer's use of force was reasonable, the court must consider various factors including: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham,* 490 U.S. at 396.  Although the severity of injury "is not by itself the basis for deciding whether the force used was excessive, . . . it is a relevant factor."  *Wardlaw*, 1 F.3d at 1304 n.7.

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. A defendant's motion for summary judgment on a § 1983 excessive force claim "is to be denied only when, viewing the facts in the record and all reasonable inferences derived therefrom in the light most favorable to the plaintiff, a reasonable jury could conclude that the excessiveness of the force is so apparent that no reasonable officer could have believed in the lawfulness of his actions." *Wardlaw,* 1 F.3d at 1303 (citing *Martin v. Malhoyt,* 830 F.2d 237, 253–54 (D.C. Cir. 1987)); *see also Oberwetter v. Hilliard,* 639 F.3d 545, 555 (D.C. Cir. 2011) (quoting *Wardlaw,* 1 F.3d at 1303).

As an initial matter, the Court addresses the parties' arguments regarding whether there is a factual dispute about Defendant Weiss's involvement in removing Plaintiff from his car and twisting, and ultimately breaking, Plaintiff's arm. Defendants argue that judgment should be entered in favor of Defendant Weiss because Plaintiff testified that Defendant Weiss "played no role in breaking his arm" and, at the summary judgment stage, the facts must be viewed in the light most favorable to Plaintiff. Defs.' Mot. at 13; 13 n.2; Defs.' Resp. Stmt. ¶ 7. Defendants' Statement of Material Facts to which there is No Genuine Dispute simply relies on Plaintiff's testimony that Defendant Weiss was not involved in applying any force to Plaintiff's arm. *See* Defs.' Stmt. ¶ 22 ("Plaintiff testified that Defendant Weiss was not involved in applying any force to Plaintiff's arm."). However, despite Plaintiff's deposition testimony that Defendant Weiss was not involved in physically restraining Plaintiff, Plaintiff alleges in his Statement of Material Facts in Dispute that there is a dispute as to "[w]hether [O]fficer Weiss was involved with applying force to, and the breaking of Plaintiff's arm, and Defendant's [sic] Weiss' location at the time his arm

was broken." Pl.'s Stmt. ¶ 7.  Indeed, Defendants acknowledge in a footnote in their Motion for Summary Judgment that Defendant Weiss testified during his deposition that he was "involved in attempting to assist Defendant Boutaugh with handcuffing Plaintiff." Defs.' Mot. at 13 n.2.  The Court's review of both officers' deposition testimony indicates that they each testified that they pulled on Plaintiff's left arm and that they were both holding on to Plaintiff's left arm when they felt it break.  Pl.'s Ex. B (Boutaugh Depo.), at 46:19-47:1; 49:3-9; 50:2-4; Pl.'s Ex. D (Weiss Depo.), ECF No. [53-4], at 33:24-34:22.  Given the stark inconsistency in Plaintiff's and Defendants' deposition testimony, Plaintiff's unwillingness to concede that there is not a dispute as to this material fact, and the Court's obligation to view the facts in the light most *favorable* to Plaintiff, the Court finds that there is a factual dispute about Defendant Weiss's involvement in restraining Plaintiff and will thus not enter summary judgment in Defendant Weiss's favor on the basis that he was not involved in the alleged excessive force.

The Court does find, however, that the force used, whether by Defendant Boutaugh alone or Defendants Boutaugh and Weiss together, was not so excessive "that no reasonable officer could have believed in the lawfulness of his actions." *Wardlaw,* 1 F.3d at 1303.  Viewing the facts in the light most favorable to Plaintiff, after Plaintiff's vehicle had been stopped by the officers, Defendant Weiss ordered Plaintiff to roll down his window, but since Plaintiff could not do so, Plaintiff opened his driver side door.  While Defendant Weiss checked Plaintiff's license and registration back at the squad car and called for a Field Sobriety officer, Plaintiff kept his driver side door open and spoke to Defendant Boutaugh through the open window on the passenger side of the car where Defendant Boutaugh was standing.  Defendant Boutaugh asked Plaintiff if he would agree to take a breathalyzer test to which Plaintiff replied "no."  According to Plaintiff, he then told Defendant Boutaugh that he was going to close his driver side door because he was cold

and proceeded to close the door.  Defendant Boutaugh, believing Plaintiff might attempt to drive

away, immediately ran to the driver side of the car, opened the driver side door, and pulled Plaintiff

out of the vehicle by his left arm.[8]  Defendant Boutaugh, with the assistance of Defendant Weiss,

bent and twisted Plaintiff's arm behind his back while applying pressure to Plaintiff's arm.

Plaintiff's arm then broke and the officers let go of his arm.

Several factors suggest that Defendants' use of force was not so excessive that no

reasonable officer could have believed in the lawfulness of his actions.  First, the officers could

have reasonably believed that Plaintiff was trying to resist or escape when he closed the door of

his vehicle.  Plaintiff had just refused to cooperate and take a breathalyzer test.  By then closing

his door, Plaintiff had also effectively refused to obey Defendant Weiss's order to open his driver's

side window since Plaintiff had opened his door in lieu of his window and Plaintiff had not been

told that he could close the door.  Although Plaintiff alleges that he told Officer Boutaugh that he

was closing his door "because he was cold," nothing in the record indicates that the officers heard

Plaintiff explain why he was closing the door.  Even if they did hear Plaintiff, it was not

unreasonable for Officer Boutaugh to believe that Plaintiff was actually closing his door in an

attempt to drive away.  *See Wasserman v. Rodacker,* 557 F.3d 635, 641 (D.C. Cir. 2009) ("Police

officers have authority to use 'some degree of physical coercion' when arresting a suspect, and

[appellant's] refusal to obey [the officer's] order prior to his arrest suggested that he might try to

---

[8] Although the Court does not rely on these facts since they are disputed, for the sake of
completeness, the Court notes that Defendant Boutaugh testified at deposition that after Plaintiff
closed the driver side door, Defendant Boutaugh told Plaintiff to keep the door open at which point
Plaintiff opened the door back up, but then closed the door again.  Defendant Boutaugh further
testified that he then walked to the driver side of the car and tried to open Plaintiff's driver side
door, but it was locked and Plaintiff refused to open the door after Defendant Boutaugh again
ordered him to open it.  According to Defendant Boutaugh's testimony, Plaintiff eventually opened
the driver side door and Defendant Boutaugh pulled him out.  Pl.'s Ex. B (Boutaugh Depo.), at
30:10-35:10.

resist or escape." (internal citation omitted)); *Oberwetter*, 639 F.3d at 555 (officer's use of force was not excessive because officer was reasonably concerned about "interference or escape" after plaintiff refused to obey officer's orders to stop dancing and leave the premises (citing *Wasserman*, 557 F.3d at 641)).

Furthermore, the nature and degree of the "physical coercion" the officers used to restrain Plaintiff was "not markedly different from what we would expect in the course of a routine arrest." *Id*. Indeed, the action of pulling a person out of his or her car, bending the person's arm behind his or her back, and applying pressure, as Plaintiff alleges the officers here did, is regularly found not to be excessive force for effectuating an arrest. *See id.* at 548 (holding that officer did not use excessive force by "ripping apart [plaintiff's] earbud, shoving her against a pillar, and violently twisting her arm" when plaintiff refused officer's order to stop dancing and leave the Jefferson Memorial at night); *Wasserman*, 557 F.3d at 641 (holding that officer did not use excessive force by "forcefully press[ing] upwards on [plaintiff's] arm before handcuffing him, causing him pain" when plaintiff had refused officer's order to stop and answer some questions, but was "not moving or offering any resistance" after officer first touched his left shoulder); *Martin*, 830 F.2d at 262 (holding that officer who believed plaintiff was going to flee in his car did not use excessive force by "brutally grabb[ing] [plaintiff] about [the] waist, . . . thr[owing] [him] back into [his] driver seat . . . [,] slamm[ing] [the] door on one of [plaintiff's] legs," and later "grabb[ing] [plaintiff's] arms[,] pull[ing] them behind [plaintiff's] back[,] and immediately plac[ing] [plaintiff] in handcuffs while pushing [him] up against [the] limousine," aggravating plaintiff's previous shoulder injury); *cf. Johnson v. District of Columbia*, 528 F.3d 969, 974 (D.C. Cir. 2008) (holding that a "reasonable officer would not have repeatedly kicked the surrendering suspect in the groin"). Courts have found such force not to be excessive even when the individual being arrested has not resisted or

attempted to flee.  *See, e.g., Robinson v. District of Columbia*, No. 03-1455, 2006 WL 2714913, *4 (D.D.C. Sept. 22, 2006) (holding that officer did not use excessive force by pushing plaintiff, shoving him onto the hood of his car, and holding plaintiff down while putting handcuffs on plaintiff's wrists, even though plaintiff did not resist or attempt to flee).

The only fact that gives the Court pause is the fact that Plaintiff's arm was broken as a result of the force used by the officers.  However, this is the only fact suggesting that the force used by the officers may have been excessive.  The United States Court of Appeals for the District of Columbia Circuit has explained that the severity of the injury itself is not a basis for deciding whether the force used was excessive; it is only a factor to consider in light of other factors. *Wardlaw*, 1 F.3d at 1304 n.7 ("Although the severity of [plaintiff's] injuries is not by itself the basis for deciding whether the force used was excessive, it does provide some indication of the degree of force [the officer] used.  Thus, it is a relevant factor under a 'test of reasonableness' "); *Oberwetter*, 639 F.3d at 556 (explaining that the fact that the officer did not cause plaintiff any serious bodily injury "tends to confirm that the use of force was not excessive").  As the other factors considered by the Court suggest that the officers had a reasonable concern about escape and executed a reasonable maneuver for subduing an individual—even an individual who is not resisting as Plaintiff claims he was not—the Court finds that the officers could have reasonably believed in the lawfulness of their actions even though Plaintiff's arm was broken.[9]  Accordingly, the Court grants Defendants summary judgment on Plaintiff's § 1983 excessive force claim.

---

[9] Although the Court does not rely on these facts since they are disputed, for the sake of completeness, the Court notes that the officers testified at deposition that once Plaintiff was pulled out of his vehicle he resisted the officers' attempts to restrain and handcuff him by "flailing" his right arm and "torqueing" his body.  Pl.'s Ex. D (Weiss Depo.), at 30:18-31:5; Pl.'s Ex. B (Boutaugh Depo.), at 36:12-39:20.

### B. Plaintiff's Common Law Claims

The Court has authority to exercise supplemental jurisdiction over Plaintiff's remaining common law claims pursuant to 28 U.S.C. § 1367(a), which potentially confers jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, the statute also provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Id.* § 1367(c). The Court finds it most appropriate to abstain from exercising supplemental jurisdiction over Plaintiff's common law claims pursuant to §§ 1367(c)(3) and (4).

First, the Court has resolved and dismissed Plaintiff's § 1983 claims, the only claims over which the Court had original jurisdiction in this case. Second, the Court finds that there are compelling reasons for not exercising jurisdiction over these claims and allowing the local court system to decide what are ultimately local issues. Specifically, while it is clear that a violation of MPD General Order 502.02 does not impact the Court's Fourth Amendment analysis, it is less clear whether such a violation would impact Plaintiff's common law claims. The parties have not directed the Court to any case law—nor has the Court found any—analyzing the impact of an officer's violation of a General Order on the officer's probable cause determination or on the general legality of the arrest. Without such guidance, the Court finds it most appropriate for the local court system to take the lead in determining the impact of a violation of a local operating procedure on a local cause of action relating to an arrest of local interest. As Plaintiff's remaining

common law claims are all substantially factually intertwined, the Court shall decline to exercise supplemental jurisdiction over any of these claims.

By declining to exercise jurisdiction over these claims the Court does not seek to suggest that these common law claims could not be decided by an appropriate motion before the local court.  Instead, the Court is only finding that it is most appropriate to decline supplemental jurisdiction over Plaintiff's remaining common law claims pursuant to §§ 1367(c)(3) and (4).  *See Araya v. JPMorgan Chase Bank, N.A.*, 775 F.3d 409, 417 (D.C. Cir. 2014).

The Court notes that Plaintiff will not be prejudiced by the Court's dismissal of Plaintiff's common law claims at this stage of litigation because the statute of limitations for any claim over which the Court has supplemental jurisdiction "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."  28 U.S.C. § 1367(d).

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS summary judgment in Defendants' favor as to Plaintiff's § 1983 claims against Defendants Boutaugh and Weiss (Count I).  The Court declines to exercise supplemental jurisdiction over Plaintiff's common law claims and, therefore, DISMISSES WITHOUT PREJUDICE Plaintiff's assault and battery, false arrest/false imprisonment, and intentional infliction of emotional distress claims.  Accordingly, this case shall be DISMISSED in its entirety.

An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge